[Cite as *State v. Balducci*, 2020-Ohio-5334.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | No. 109262 |
| v. | : | |
| ANTHONY BALDUCCI, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 19, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636936-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Anthony Balducci ("Balducci"), appeals from the trial court's judgment denying his motion to withdraw his guilty plea. After a careful review of the record, we find the trial court did not abuse its discretion in denying Balducci's motion and we therefore affirm the judgment.

## I. FACTS

{¶ 2} Balducci was indicted on February 12, 2019, for offenses dated January 27, 2019. The indictment alleged four counts: (1) aggravated murder under R.C. 2903.01(A) (Count 1), an unclassified felony; (2) murder under R.C. 2903.02(B) (Count 2), an unclassified felony; (3) felonious assault under R.C. 2903.11(A)(1) (Count 3), a second-degree felony; and (4) having weapons while under disability under R.C. 2923.13(A)(2) (Count 4), a third-degree felony. All four counts included one- and three-year firearm specifications, but Count 4 was later amended to delete the specifications.

{¶ 3} The state described video footage that formed the underlying facts of the charges at the original sentencing hearing at which Balducci moved to withdraw his guilty plea. The state reported that Balducci drove a Chevy Impala to pay a cell phone bill in person at the cell phone store on January 27, 2019. Video footage from the cell phone store shows him leaving the store at 1:39 p.m. Shortly thereafter, both Balducci and the victim appear in security footage at a dollar store. The victim left the store and was captured on neighborhood security footage entering a pedestrian footbridge at 1:53 p.m. The last video showing the victim alive on the footbridge was at 1:54 p.m.

{¶ 4} There is also video of Balducci driving the Impala to a street near the same footbridge. The video shows that he parked his car and exited the vehicle at 1:46 p.m., then walked towards the footbridge. He is then off camera for ten minutes and 22 seconds, after which he reappears, returning from the direction of the

footbridge, and walks towards the vehicle at 1:57 p.m. No other individuals appear on the video footage in the vicinity of the footbridge during the same timeframe.

{¶ 5} Two teenagers found the victim on the footbridge around 4:00 p.m. the same day and reported their finding to the police. The victim suffered three gunshot wounds, two to the face and one to his heart. The state represented that the clothes Balducci wore in the video tested positive for gunshot residue a few days later.

### A. Plea Hearing

{¶ 6} The trial court held a pretrial on October 24, 2019. Trial was set for October 28, 2019. On the morning of trial, Balducci accepted a plea deal shortly before voir dire was to begin. As part of the plea deal, the state amended Count 1 from aggravated murder under R.C. 2903.01(A) to murder under R.C. 2903.02(A). The one- and three-year firearms specifications remained on Count 1. Count 4, having weapons while under disability, had previously been amended to delete the firearms specifications. The state dismissed Count 2 and Count 3. Balducci pled guilty to amended Counts 1 and 4.

{¶ 7} In lieu of trial, the court held a plea hearing pursuant to Crim.R. 11. After the state outlined the plea agreement, the trial court addressed Balducci personally. The trial court noted that Balducci had the opportunity to speak with his attorneys and family members before accepting the plea deal. Before beginning the questioning, the trial court informed Balducci that he was "welcome to stop and ask me, or of course you may ask your respective attorneys" if he had any questions.

(Tr. 17.) Balducci stated that he understood. In response to the trial court's questioning, Balducci stated that he is 42 years old; that he had obtained a GED; that he was not under the influence of any drugs, alcohol, or medication; that he was satisfied with the work of his attorneys; and that he is a United States citizen.

{¶ 8} The trial court reminded Balducci that he could ask questions before the court proceeded to review the constitutional rights he would waive by pleading guilty. Balducci stated that he understood he would be waiving certain constitutional rights by pleading guilty, including the right to a trial by jury; the right to confront and cross-examine the state's witnesses; the right to call witnesses on his behalf; the right to a lawyer; and the right to testify or not testify. He also stated that he understood that the state would bear the burden of proof beyond a reasonable doubt at trial.

{¶ 9} The court then informed Balducci that the penalty for murder, Count 1, is 15 years to life and explained that with the firearm specifications, he could face a sentence of 18 years to life for Count 1, followed by parole supervision. Balducci stated he understood. The court then explained the potential maximum penalties associated with Count 4, having weapons while under disability. The court explained that Count 4 could include up to three years of postrelease control, although the court immediately clarified that he would instead be subject to parole due to the murder conviction. The trial court also stated that it could order consecutive sentences on the two counts to which he was pleading guilty and that

the court would set a date for sentencing if he entered a guilty plea. Balducci stated that he understood.

{¶ 10} Next, the trial court set forth the counts to which Balducci was pleading guilty, including Count 1, murder with one- and three-year firearms specifications and Count 4, having weapons while under disability. Balducci pled guilty to each count. He stated it was his choice to plead guilty and that no one made any threats or promises in order to get him to plead guilty. The trial court found that Balducci understood his constitutional rights and that he knowingly, intelligently, and voluntarily waived those rights. The court accepted his guilty plea and went on to discuss logistics for the sentencing hearing.

{¶ 11} The court indicated that it would accept sentencing memorandums and that it would "wait to receive the information that I get from both the prosecutors as well as your lawyers" before imposing a sentence. (Tr. 16; 22-23.) Balducci's trial counsel initially requested an expedited presentencing investigation report, but later agreed to proceed to sentencing without a report. The court advised Balducci's counsel, "if you file a sentencing memorandum, have your client's letters from his family present and able for me to review" and scheduled sentencing for October 31, 2019, three days after the plea hearing. (Tr. 29-30.)

**B. Motion to Withdrawal**

{¶ 12} At what started as a sentencing hearing, the court began by stating to defense counsel that it had reviewed the state's sentencing memorandum, a prior

presentence investigation report, and "all of the information that was contained in the letter that was provided to the Court as it related to your client." (Tr. 32-33.)

{¶ 13} The state then recounted the video footage of Balducci and the victim. The court then heard from the victim's father and the mother of the victim's child, who had just started kindergarten. The victim's mother was also present, but did not address the court. Balducci's attorneys spoke on his behalf and asked for concurrent sentences, stating that Balducci was "deeply sorry for what he did" and "has accepted responsibility." (Tr. 42.)

{¶ 14} The trial court then addressed Balducci, stating "I am appreciative that you accepted responsibility." (Tr. 44.) At that point, Balducci asked to speak. He stated:

> Thank you, Your Honor. My heart goes out to his family. I know [the victim's mother] very well, his mother, she lived with me for a year and a half. I supported her like I would my own mother.
>
> With that being said, I want to withdraw my plea of guilty. I don't feel that I should plead guilty to something I didn't do. I didn't discuss this with my lawyers first because I feel that their best interest is not my best interest. I would like to enter a plea of not guilty.
>
> * * *
>
> I made a rash decision, Your Honor, and I apologize.

(Tr. 44.)

{¶ 15} The trial court advised that he should take time to consider his decision to withdraw his plea and that it did not think the decision to withdraw was in his best interest. Balducci responded:

I understand, Your Honor and I have done that. We sat for hours the other day before they convinced me that pleading guilty was my only way out. They told me that if I go to trial I'm not going to win. And with that attitude, you're not going to win, and that's how I felt, like I had no other choice but to plead guilty.

\* \* \*

There's things that I requested that the lawyers didn't do to try to help my case, and I feel that my best interest is not their best interest.

(Tr. 45-46.)

{¶ 16} The trial court again encouraged Balducci to think seriously about his decision, stating that his counsel was very experienced. He replied:

I understand, Your Honor, and I by no means am as educated as my lawyers. And so hindsight is 20/20, and after I went back and I was able to actually think about what happened, we could say buyer's remorse, but even at the time of sentencing when I did decide to plead guilty, oftentimes I didn't understand what you were saying. I had to ask my lawyer what do I do, and he said "guilty," so I would just repeat what he told me to say. I truly didn't understand what you were saying a lot of the times until I went back and actually thought about it.

(Tr. 48.)

{¶ 17} The trial court questioned Balducci's sincerity regarding his supposed lack of understanding given his responses and demeanor at the plea hearing, but set a hearing date for his motion to withdrawal his guilty plea.

## C. Hearing on Motion to Withdraw Plea

{¶ 18} A hearing for the motion to withdraw was set for November 6, 2019. The parties appeared in court that day, including Balducci's original counsel and new counsel. Balducci's original counsel withdrew from representing him. The trial court granted a continuance to allow his new counsel more time to review the case.

During the proceeding, Balducci agreed with the trial court that he spent "quite a lot of time" speaking with his family and attorneys before entering his guilty plea. (Tr. 54.) He also confirmed that he watched the state's video evidence before pleading guilty.

{¶ 19} The trial court held a hearing on Balducci's motion to withdraw his plea on November 14, 2019. The trial court began the hearing by stating that it had reviewed the jail logs and transport logs indicating when trial counsel met with Balducci. The courted noted that Balducci's counsel went to the jail seven times and that Balducci was transferred to the court five times to meet with his attorneys, excluding the dates he came to the court to plea and be sentenced, for a total of at least 12 visits. The court also stated that it reviewed the timeframe of the case, and noted the court's multiple interactions with Balducci, and his interactions with his previous lawyers. The trial court further noted that Balducci had pled guilty in prior cases and was not "new to the system." (Tr. 59.)

{¶ 20} The court also noted its familiarity with Balducci's original counsel and their many years of experience. The court observed that his counsel "spent a significant amount of time with [Balducci]" and "were thoroughly engaged in talking to him." (Tr. 67.) The trial court acknowledged Balducci's concern that his original counsel did not have his best interests in mind based on their assessment of the likely outcome of proceeding to trial. It explained that "good lawyers are not there to tell you just what you want to hear" and still "fight" for their clients regardless of their assessment of the likely outcome. (Tr. 74.)

{¶ 21} The trial court stated that it also reviewed the transcripts from the case up to that point. The trial court noted the absence of any evidence of mental health challenges or cognitive impairment and observed that Balducci appeared "very engaged" and "very attune[d]" during court proceedings. (Tr. 65.) The trial court also stated that it believed Balducci "was accepting responsibility, truthfully, for the crime in question." (Tr. 67.) It did not observe any indication that Balducci was confused or concerned during the plea hearing.

{¶ 22} The trial court also noted several circumstances that led it to question the sincerity of Balducci's desire to withdraw his guilty plea. In particular, it noted that Balducci stated "hindsight is 20/20" as one reason for requesting a withdrawal. The court further noted that the timing of Balducci's request was "suspect to the Court" in that he waited until just before sentencing was to proceed before addressing the victim's family members and then finally requesting to withdraw his plea. (Tr. 73.)

{¶ 23} The trial court also gave Balducci's new counsel a chance to speak on his behalf regarding his motion to withdraw his guilty plea. Counsel argued that original counsel's 12 visits with Balducci prior to his guilty plea were "very little." (Tr. 82.) Counsel further argued that original counsel failed to investigate a so-called "Facebook confession," and instead relied on the results of the state's investigation, which apparently removed the Facebook poster as a suspect before Balducci was identified as a suspect. (Tr. 82.) They argued that trial counsel should have retained an independent investigator to investigate the possible confession.

{¶ 24} Finding that Balducci had merely changed his mind when faced with sentencing, the trial court denied his motion to withdraw his plea. The trial court then sentenced Balducci to life with the possibility of parole after 15 years on Count 1, murder, and three years on the three-year firearm specification associated with Count 1. The court ordered the three-year term be served before the 15-year term so that the full sentence for Count 1 was life with the possibility of parole after 18 years. The trial court sentenced Balducci to three years on Count 4, having a weapon while under disability, to be served concurrently with the 15-year sentence for murder, but consecutively with the three-year sentence for the firearm specification. The total sentence is life with the possibility of parole at 18 years.

{¶ 25} Balducci raises one assignment of error on appeal:

> The trial court abused its discretion in denying Appellant's presentence motion to withdraw plea.

## II. LAW AND ANALYSIS

### A. Standard of Review

{¶ 26} "We review a trial court's ruling on a motion to withdraw a guilty plea for abuse of discretion." *State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 7, citing *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992). "'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "'[U]nless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion.'" *State*

*v. Abercrombie*, 8th Dist. Cuyahoga No. 108147, 2019-Ohio-4786, ¶ 10, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 213-214, 428 N.E.2d 863 (8th Dist.1980), quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978).

## B. Motions to Withdraw

{¶ 27} Crim.R. 32.1 governs the withdrawal of a guilty plea. It states that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 28} "A Crim.R. 32.1 motion 'is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court.'" *Hines* at *id.*, quoting *State v. Smith*, 49 Ohio St.2d 261, 263, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. In general, "a presentence motion to withdraw a guilty plea should be freely and liberally granted," but it is well-established that a "defendant does not have an absolute right to withdraw a plea prior to sentencing." *Hines* at ¶ 8.

{¶ 29} The "'trial court must conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea.'" *Hines* at *id.*, quoting *Xie* at 527. A trial court's denial of a presentence motion to withdraw is not an abuse of discretion when the record reflects:

> (1) the defendant is represented by highly competent counsel; (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea; (3) after the motion to withdraw is filed, the accused

is given a complete and impartial hearing on the motion; and (4) the court gives full and fair consideration to the plea withdrawal request.

*State v. Read-Bates*, 8th Dist. Cuyahoga Nos. 108848, 108849, 108850, 108851, 2020-Ohio-3456, ¶ 16, citing *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980).

{¶ 30} The trial court might also consider additional nonexhaustive factors in its determination:

(5) whether the motion was made timely; (6) whether the motion states specific reasons for withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was perhaps not guilty or had a complete defense; and (9) whether the state would suffer prejudice if the defendant is allowed to withdraw the plea. *State v. Benson*, 8th Dist. Cuyahoga No. 83718, 2004-Ohio-1677, ¶ 9; *State v. Sellers*, 10th Dist. Franklin No. 07AP-76, 2007-Ohio-4523, ¶ 34; *State v. Moore*, 8th Dist. Cuyahoga No. 98132, 2012-Ohio-5734, ¶ 13.

*Hines* at ¶ 10.

{¶ 31} "A trial court's adherence to Crim.R. 11 raises a presumption that a plea is voluntarily entered." *Abercrombie*, 8th Dist. Cuyahoga No. 108147, 2019-Ohio-4786, ¶ 12, citing *State v. McKissick*, 8th Dist. Cuyahoga No. 105607, 2018-Ohio-282, ¶ 23. "And a defendant moving to withdraw the plea bears the burden of rebutting that presumption by demonstrating that the plea was infirm." *Abercrombie* at *id.*, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 89651, 2008-Ohio-4866, ¶ 26.

{¶ 32} After careful review of the record, we find that Balducci was represented by competent counsel, was afforded a full Crim.R. 11 hearing before he entered his plea, was given a full and impartial hearing on his motion to withdraw,

and that the trial court gave full and fair consideration to his plea-withdrawal request. We also find that Balducci understood the nature of the charges and the possible penalties.

{¶ 33} Given the lack of substantive reasons for withdrawing the guilty plea, we find that the trial court did not abuse its discretion in denying Balducci's motion to withdraw his guilty plea. When Balducci moved to withdraw, he stated that he made a rash decision in pleading guilty. As the trial court noted, he went on to comment that hindsight is 20/20. Although Balducci also stated that he wanted his lawyers to investigate his case differently, this record provides no substantive support for his claim of innocence or available defenses. Accordingly, we find that the trial court did not abuse its discretion in finding that Balducci merely changed his mind and refusing to allow withdrawal of his guilty plea.

## C. Representation by counsel

{¶ 34} Balducci first argues that his initial trial counsel was not highly competent. The trial court stated at the withdrawal hearing that it was familiar with Balducci's initial counsel's professional reputations and believed them both to be highly competent attorneys. Moreover, Balducci stated at the plea hearing that he was satisfied with his original counsel.

{¶ 35} We begin our analysis of this argument with the presumption that properly licensed attorneys in Ohio are competent. *State v. Smith*, 17 Ohio St. 3d 98, 100, 477 N.E.2d 1128 (1985). The record before us does not sufficiently rebut

this presumption, so we cannot say that the trial court abused its discretion in denying the motion to withdraw based on original counsel's representation.

{¶ 36} Balducci argues that his initial counsel spent an inadequate amount of time with him. But the trial court noted that the jail logs and transport logs indicate that his original counsel visited with Balducci 12 times. Balducci does not dispute those records, but points out that they do not confirm how many visits were contact visits. He further acknowledged that he met with counsel at the court and reviewed the state's video footage together. In addition, Balducci interacted with counsel and the court on at least two additional occasions prior to pleading guilty and did not express any concerns about his counsel until the sentencing hearing at which he moved to withdraw his plea. On this record, we cannot say that the trial court abused its discretion in finding that Balducci's original counsel spent a sufficient amount of time with him. *See State v. Hall*, 8th Dist. Cuyahoga No. 108235, 2019-Ohio-5123, ¶ 22 (defendant facing a mandatory sentence of life in prison if convicted as indicted was represented by highly competent counsel where defense counsel met with his client 15 times before the plea hearing, reviewed video evidence with her, and expressed concern about the risk to his client if they took the case to trial rather than accepting a "sound plea deal.").

{¶ 37} Balducci also argues that his original counsel was inadequate because they failed to hire an independent investigator to evaluate a so-called "Facebook confession" from another individual. (Tr. 82.) Counsel instead relied on the results of the state's investigator, which removed the individual as a suspect before Balducci

became a suspect. Balducci's counsel was not required to hire an independent investigator and on this record, we cannot conclude that counsel's decision to not hire an independent investigator permits the withdrawal of Balducci's plea. *See State v. Walker*, 10th Dist. Franklin No. 04AP-813, 2005-Ohio-6365, ¶ 55, quoting *Wiggins v. Smith*, 539 U.S. 510, 521-522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), quoting *Strickland* at 690-691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

{¶ 38} In addition, we must restrict our review to the record before us. *State v. Wittine*, 8th Dist. Cuyahoga No. 90747, 2008-Ohio-5745, ¶ 4. There is no evidence of the Facebook confession or the state's investigation of the confession in the record other than counsel's representations at the withdrawal hearing and in the appellate briefs.

{¶ 39} Balducci also notes that his trial counsel "never filed a single motion nor subpoena." The trial docket shows that his counsel requested discovery from the state and the record supports that they reviewed the state's evidence with Balducci before he entered his guilty plea. Balducci has not identified any specific motions that must or should have been filed. We cannot conclude that original counsel was incompetent based on this alleged deficiency.

{¶ 40} Balducci also argues that counsel was incompetent for failing to file a sentencing memorandum prior to the sentencing that was scheduled three days after the plea. Trial counsel is not required to file a sentencing memorandum; there

is no such duty. *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 4. Rather, "the vast majority of defense attorneys choose to forego a sentencing memorandum and speak directly to the court at sentencing," which Balducci's counsel did. *Id.* There is not much sentencing flexibility for murder and his trial counsel urged the court to impose concurrent sentences. Even though the trial court indicated that a sentencing memorandum from defense counsel would be helpful, we cannot find Balducci's trial counsel was incompetent for failing to file a sentencing memorandum where there is no duty to do so and where they provided letters to the court on behalf of Balducci and spoke directly to the court on his behalf at the sentencing hearing.

{¶ 41} Accordingly, we cannot second-guess the trial court's determination that his counsel provided him with highly competent representation.

### D. Crim.R. 11 hearing

{¶ 42} Balducci argues that he was not clearly advised of the maximum penalties he was facing at his plea hearing. The record does not support this argument. Crim.R. 11(C)(2)(a) requires the courts address a defendant personally and determine that he or she "is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved * * *." *State v. Cochran*, 8th Dist. Cuyahoga Nos. 91768, 91826, 92171, 2009-Ohio-1693, ¶ 9, quoting Crim.R. 11(C)(2)(a). The record shows that the trial court informed Balducci of the maximum penalties for each count to which he pled guilty.

{¶ 43} At the plea hearing, the trial court correctly informed Balducci that the maximum penalty for murder (Count 1) was 15 years to life in prison. R.C. 2903.02(D); 2929.02(B)(1). It also explained that the firearm specifications subjected him to an additional three years for a total sentence of 18 years to life on the murder count. With regard to Count 4, the weapon while under disability charge, the trial court correctly explained that Balducci could be sentenced to nine to 36 months in prison with up to three years of postrelease control and ordered to pay a maximum fine of up to $10,000. R.C. 2929.14. Balducci stated that he understood all of this.

{¶ 44} The court initially advised Balducci that he could be subject to three years of postrelease control on the weapons disability count (Count 4), but promptly clarified that because he pled guilty to murder, an unclassified felony, he would actually be subject to parole. The trial court did not err in this instruction. *State v. Anderson*, 8th Dist. Cuyahoga No. 92576, 2010-Ohio-2085, ¶ 25, citing *State v. Clark*, 119 Ohio St.3d 246, 2008-Ohio-3748, 893 N.E.2d 462. ("[B]ecause the defendant who is sentenced to an unclassified felony is not eligible for postrelease control, the trial court is not required to discuss postrelease control or parole in the defendant's plea colloquy under Crim.R. 11(C)(2)."); *State v. Cochran*, 8th Dist. Cuyahoga Nos. 91768, 91826, 92171, 2009-Ohio-1693, ¶ 28, citing *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("[T]rial courts are not required to explain [parole] as part of the maximum possible penalty in a Crim.R. 11 colloquy.").

{¶ 45} Otherwise, the record demonstrates that Balducci received a full Crim.R. 11 hearing. The trial court stated several times that Mr. Balducci not only stated he understood the consequences of his plea, but appeared to understand based on his demeanor in the courtroom and the lack of any evidence of cognitive impairment or poor mental health. Balducci stated the decision to plead guilty was "mine and my family's." (Tr. 27-28.) His statement demonstrates that the decision to plead guilty was his own. That his family also supported the decision does not invalidate his autonomy in the decision.

{¶ 46} The trial court also noted that Balducci had previously pled guilty in another case and therefore was not completely unfamiliar with the plea process. We add that the trial court twice invited Balducci to ask any questions he might have, but Balducci did not ask any questions or request clarification on any of the court's instructions. At no time during the plea hearing did Balducci express any confusion or indicate that he misunderstood the charges or the possible penalties.

{¶ 47} The record shows that Balducci understood the nature of the charges, the effect of the guilty plea, and the possible penalties, and that his plea was entered knowingly, voluntarily, and intelligently. Thus, the trial court did not abuse its discretion in denying Balducci's motion to withdraw based on the plea colloquy.

### E. Complete and impartial withdraw hearing with full and fair consideration to the plea withdrawal request

{¶ 48} Balducci claims he was not given a complete and impartial hearing with full and fair consideration to his plea-withdrawal request. We find that the hearing was both full and fair and complete and impartial.

**{¶ 49}** A full evidentiary hearing is not required in all cases. *State v. Read-Bates*, 8th Dist. Cuyahoga Nos. 108848, 108849, 108850, 108851, 2020-Ohio-3456, ¶ 21, citing *Robinson*, 8th Dist. Cuyahoga No. 89651, 2008-Ohio-4866, at ¶ 24. "The scope of a hearing on a motion to withdraw should reflect the substantive merits of the motion." *Read-Bates* at ¶ 21, citing *Robinson* at *id.* "'[B]old assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit.'" *Read-Bates* at *id.*, citing *Robinson* at ¶ 26, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 61464, 1992 Ohio App. LEXIS 6259, 14-15 (Dec. 10, 1992); *Wittine*, 8th Dist. Cuyahoga No. 90747, 2008-Ohio-5745, ¶ 8 ("The scope of a hearing on a motion to withdraw a guilty plea is dependent upon the facial validity of the motion itself.").

**{¶ 50}** "Therefore, where a defendant fails to make a prima facie showing of merit, the trial court need not 'devote considerable time to' his or her request to withdraw." *Read-Bates* at ¶ 22, quoting *Smith* at 14. "Further, the scope of the hearing is within the sound discretion of the trial court, subject to this court's review for an abuse of discretion." *Read-Bates* at *id.*, citing *State v. Farkosh*, 8th Dist. Cuyahoga No. 102393, 2015-Ohio-3588, ¶ 9, citing *Xie*, 62 Ohio St.3d at 526, 584 N.E.2d 715. "'This approach strikes a fair balance between fairness for an accused and preservation of judicial resources.'" *Read-Bates* at *id.*, quoting *Smith* at 15.

**{¶ 51}** When moving to withdraw his plea, Balducci stated that he made a rash decision, that "hindsight is 20/20" and that after he "was able to actually think about what happened, we could say buyer's remorse, but even at the time of

sentencing when I did decide to plead guilty, oftentimes I didn't understand what you were saying." (Tr. 48.) The record contradicts Balducci's assertion that he did not understand what the trial court was saying at the plea hearing. He stated throughout that proceeding that he understood what was happening and did not raise any issues or ask any questions even though the trial court invited him to do so.

{¶ 52} Rather than hold a hearing the same day as Balducci made his motion, the trial court set a separate hearing date and granted his new counsel a continuance to become more familiar with the record before the hearing. At the motion to withdraw hearing, the trial court recalled its thorough Crim.R. 11 colloquy at the plea hearing and detailed the proceedings when Balducci moved to withdrawal. There is no indication in the record that the trial court did not provide a complete and impartial withdraw hearing and full and fair consideration of Balducci's request to withdrawal his plea.

{¶ 53} The trial court interacted with the state and Balducci's counsel at the hearing and set forth several reasons, based in the record, for denying the motion. The trial court reviewed the transcripts from the case, the jail logs, and transport logs. It also reviewed the parties' briefs on Balducci's motion to withdraw. The trial court explained that Balducci's motion to withdraw seemed disingenuous given that he only spoke up at the end of the sentencing hearing after addressing the victim's mother.

**{¶ 54}** Balducci argues that his original counsel knew he wanted to withdraw because members of his family called his counsel to tell them so, but the trial court observed that his counsel seemed utterly surprised by his motion to withdraw. Further, Balducci admitted that he did not discuss his withdrawal request with his lawyers first. (Tr. 44.)

**{¶ 55}** Balducci also argues that the hearing was not impartial because the trial court "lectured" Balducci during the first portion of the hearing and because the court expressed "suspicion" about Balducci's motivation for changing his plea based on his statement that "hindsight is 20/20." Balducci's new counsel expressed these concerns of partiality to the trial court at the withdrawal hearing and the trial court expressly refuted them:

> [COUNSEL]: It sounds like there has already been a decision made.
>
> THE COURT: Absolutely not. I'm happy to hear from your client, hear his additional concerns. This Court is only making the most thorough record that I possibly can of the record of the information.

(Tr. 91.)

**{¶ 56}** The record is indeed thorough and lacks support for a substantive legal reason to allow Balducci to withdraw his plea. The fact that the trial court found Balducci's assertions unpersuasive or suspicious does not mean it failed to adequately and impartially consider his request. *Read-Bates* at ¶ 26; *Abercrombie* at ¶ 18. As the trial court itself explained, expressing doubt "doesn't mean that I'm predisposing my perspective, however, after listening to what your client has to say." (Tr. 93.) The trial court provided reasons why it was suspicious of Balducci's

motives, including making the motion right after he addressed the victim's family and right before sentencing, that his original counsel appeared surprised, and that he stated "hindsight is 20/20." After a careful review of the record, we find no substantive reason to second-guess the trial court's observations and conclusions.

### F. Change of heart

{¶ 57} Balducci argues that he did not simply change his mind. "A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea." *State v. Hoyle*, 8th Dist. Cuyahoga No. 102791, 2016-Ohio-586, ¶ 31, citing *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 7, citing *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991).

{¶ 58} Balducci stated at the withdrawal hearing that he "did not feel that [he] should plead guilty to something [he] didn't do." (Tr. 44.) His appellate brief sets forth a couple of possible defenses, but without any evidentiary support. "[A] defendant's protestations of innocence are insufficient grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered." *Read-Bates*, 8th Dist. Cuyahoga Nos. 108848, 108849, 108850, 108851, 2020-Ohio-3456, ¶ 27, citing *Cleveland v. Brown*, 8th Dist. Cuyahoga Nos. 107939 and 108145, 2019-Ohio-5254, ¶ 19. Balducci's alleged innocence and potential maximum prison sentence were known to him at the time of the plea agreement. We cannot find that the trial court abused its discretion where the record lacks specific evidentiary support for his claim of innocence.

**{¶ 59}** Balducci also stated that his trial counsel "convinced" him "that pleading guilty was [his] only way out." (Tr. 45.) But "the fact that a defendant may have felt 'pressured' to enter a plea is not a sufficient basis to withdraw a plea in the absence of evidence of coercion." *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 42, citing *State v. Shaw*, 8th Dist. Cuyahoga No. 102802, 2016-Ohio-923, ¶ 6-9. There is no evidence of coercion here.

**{¶ 60}** After careful consideration of the record before us, we find that the trial court did not abuse its discretion in finding that Balducci merely experienced a change of heart. The record supports that Balducci's plea was knowingly, intelligently, and voluntarily made and that he received a full, fair, and impartial hearing. The trial court thoroughly explained that based on everything it observed at the various proceedings and in particular at the plea hearing, that Balducci's request seemed to be motivated by a mere change of heart. The court based its concern on the record before it and on firsthand observations of Balducci's statements and demeanor. "We must defer to the trial court's judgment in evaluating the "'good faith, credibility and weight'" of [Balducci's] motivation and assertions in entering and attempting to withdraw his plea." *Musleh* at ¶ 43, quoting *Xie*, 62 Ohio St.3d 521, 525, 584 N.E.2d 715, quoting *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977). Because the record does not demonstrate a substantive legal reason to permit the withdrawal of Balducci's plea, we must find that the trial court did not abuse its discretion in denying his motion.

**{¶ 61}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR